UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | PRESENTENCE INVESTIGATION REPORT |
| | ) | |
| | ) | Docket No.:   0974 3:12CR05280-001-AJB |
| CANIZALES-Araujo, Santiago | ) | |
| | ) | |

**Prepared for:**   The Honorable Anthony J. Battaglia
U.S. District Judge

**Prepared by:**   Kevin F. Pagay
U.S. Probation Officer
San Diego, CA
(619) 557-5809
kevin_pagay@casp.uscourts.gov

| **Assistant U.S. Attorney** | **Defense Counsel** |
|---|---|
| Brandon James Kimura | Gary Paul Burcham (appointed) |
| 880 Front Street | 964 Fifth Avenue |
| Suite 6293 | Suite 300 |
| San Diego, CA 92101 | San Diego, CA 92101 |
| (619) 546-9614 | (619) 699-5930 |

**Sentence Date:**   April 12, 2013, at 9:00 a.m.

**Offense:**   8 U.S.C. § 1326(a) and (b), Removed Alien Found in the United States, a Class C felony.

**Penalty:**   (Based on a prior felony conviction)
10 years' imprisonment; 3 years' supervised release; $250,000 fine; and a $100 special assessment.

**Arrest Date:**   November 24, 2012

**Release Status:**   In continuous federal custody since arrest; 140 days served as of April 12, 2013.

**Detainers:**   ICE detainer

**Codefendants:**   None.

**Identifying Data:**



| | |
|---|---|
| **Date of Birth:** | January 22, 1974 |
| **Age:** | 39 |
| **Race:** | White |
| **Hispanic Origin:** | Hispanic origin |
| **Sex:** | Male |
| **Eye Color:** | Brown |
| **Hair Color:** | Black |
| **Height:** | 5ft. 5in. |
| **Weight:** | 155 lbs. |
| | |
| **SSN#:** | None |
| **FBI#:** | 558974WA8 |
| **USM#:** | 57393-198 |
| **CII#:** | A10598439 |
| **CA/DL#:** | None |
| **ICE#:** | A72998562 |
| **PACTS#:** | 17887 |
| | |
| **Education:** | 9 years |
| **Citizenship:** | Mexico (Deported Alien) |
| **Country of Birth:** | Mexico |
| **Place of Birth:** | San Quintin, Baja California, Mexico. |
| | |
| **Current Address:** | California City Correctional Center<br>P.O. Box 2590<br>California City, CA 93504 |
| | |
| **Legal Residence:** | San Quintin, B.C. , Mexico |
| | |
| **Alias(es):** | None. |
| | |
| **Alternate IDs:** | None. |

*Restrictions on Use and Redisclosure of Presentence Investigation Report*. Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

**This presentence report has taken into consideration the statutory factors listed at 18 U.S.C. § 3553(a) and the advisory sentencing guidelines.**

**PART A. THE OFFENSE**

### Charge(s) and Conviction(s)

1. On December 27, 2012, a one-count information was filed in the Southern District of California charging Santiago CANIZALES-Araujo with 8 U.S.C. § 1326(a) and (b), Removed Alien Found in the United States.

2. On January 29, 2013, CANIZALES pled guilty to the information.

### The Offense Conduct

3. The following information was referenced from discovery material provided by the United States Attorney's Office.  Neither defense counsel nor the AUSA provided any additional information or comment regarding the offense

4. On November 24, 2012, United States Border Patrol (USBP) agents performing line watch duties near the Imperial Beach Border Station encountered four individuals attempting to further their entry into the United States by concealing themselves in some thick brush.  After acknowledging their Mexican citizenship, they were taken into custody, including one individual later identified as CANIZALES.

5. Computerized inquiries performed against CANIZALES revealed that he had a criminal and immigration history in the United States.  He was also previously deported from the United States on July 9, 2010.

6. Post arrest, CANIZALES admitted his Mexican citizenship and lack of immigration papers.  He stated that he intended to travel to New York.

### Defendant's Statement of the Offense

7. CANIZALES was interviewed on February 14, 2013, via video conference with the California City Correctional Center in California City, California.  Defense counsel was present throughout the presentence interview, which was conducted in Spanish with the assistance of a court-certified interpreter.

8. Following the advice of defense counsel, CANIZALES stipulated to the factual basis of the instant offense as noted in his plea agreement.  Specifically, he acknowledged that he is a not United States citizen and that he was previously removed from the United States on July 9, 2010, after suffering a conviction on November 6, 2009, for deported alien found in the United States.  Subsequently, he was found in the United States illegally on November 24, 2012.

9. The defendant said his arrest has affected him physically and emotionally because he constantly worries about his family and how they are surviving without him.  He pointed

      out that he is his family's primary source of financial support, and the sole caregiver for his ailing father who is afflicted with osteoporosis. CANIZALES expressed his remorse and he indicated that he is tired of being incarcerated for illegally returning to this country.

10. Following his release, CANIZALES said he will return to Mexico to be with his family and work at his father's automotive body shop. He said he will strive to provide everything his family needs and spend more time with them because he feels life is too short to waste any moment together.

### Offense Level Computation

11. The 2012 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG § 1B1.11.

12. <u>Base Offense Level</u>: Pursuant to USSG § 2L1.2(a), the base offense level for removed alien found in the United States is 8.     **8**

13. <u>Specific Offense Characteristics</u>: CANIZALES was convicted of deported alien found in the United States on October 30, 2009, in the U.S. District Court, Southern District of California, Docket No. 09CR03663-01-JAH, and sentenced to 10 months custody. He was then deported to Mexico on July 9, 2010. Pursuant to USSG § 2L1.2(b)(1)(D), a four-level upward adjustment is warranted.     **+4**

14. <u>Adjusted Offense Level</u>:     **12**

15. <u>Adjustment for Acceptance of Responsibility</u>: The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a).     **-2**

16. <u>Total Offense Level:</u>     **10**

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

17. Unless otherwise indicated, the defendant was represented by defense counsel or waived attorney representation for the following convictions/adjudications.

### Sources of Information

18. Computer clearances were conducted through the FBI, CII, California Department of Motor Vehicles (DMV), courts and law enforcement agencies. Relevant documents were requested and are referenced for the following entries.

19. Following the advice of defense counsel, CANIZALES declined to discuss his criminal history.

**Juvenile Adjudication(s)**

20. None known.

**Adult Criminal Conviction(s)**

| | Date of Arrest | Charge/Agency | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 21. | 03/19/00 (Age 26) | 8 U.S.C. § 1326, Deported Alien Found in the United States. U.S. Border Patrol (San Diego) | U.S. Dist. Crt., SD/CA, Dkt. No. 00CR01255-001-H. 05/01/00: P/G (fel.), 60 days' jail, 1 yr. S/R. 05/17/00: Released and deported. 08/15/00: S/R violation, B/W issued. 08/31/00: S/R rvkd., 4 mos. cust. (1 mo. c/s and 3 mos. c/c w/00CR2503-GT). | 4A1.2(e)(3) | **0** |

22. U.S. Border Patrol agents arrested CANIZALES after they observed him jump over the U.S/Mexico International Boundary fence near the San Ysidro, California, Port of Entry. Computerized inquiries revealed that he had been previously deported from the United States on March 13, 2000. The defendant also admitted to being an alien smuggling foot guide on several prior occasions.

23. Adjustment to Supervision: The defendant violated his conditions of supervised release as evidenced by his conviction in Dkt. No. 00CR02503-GT.

| | Date of Arrest | Charge/Agency | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 24. | 07/09/00 (Age 26) | 8 U.S.C. § 1326, Deported Alien Found in the United States. U.S. Border Patrol (San Diego) | U.S. Dist. Crt., SD/CA, Dkt. No. 00CR2503-001-GT. 08/07/00: P/G (fel.), 10 mos. cust., 1 yr. S/R. 06/07/01: Released and deported. 07/12/01: S/R viol., B/W issued. 09/12/01: S/R rvkd., 14 mos. cust. c/s to any term. 08/20/03: Released and deported. | 4A1.1(a) 4A1.2(k)(1) | **3** |

25. Court documents indicate that CANIZALES was found and arrested near the San Ysidro Port of Entry, after he illegally entered the United States.

26. <u>Adjustment to Supervision</u>: The defendant's term of supervision commenced on June 7, 2001. Supervision records indicate that the defendant was apprehended on June 14, 2001, and voluntarily returned to Mexico on June 15, 2001. The revocation of his supervised release occurred following his conviction in Dkt. No. 01CR2458-001-GT.

27. 07/12/01 (Age 27)   8 U.S.C. § 1326, Deported Alien Found in the United States. U.S. Border Patrol (San Diego)   U.S. Distr. Crt. SD/CA Case No. 01CR2458-001-GT. 09/13/01: P/G (fel.), 15 mos. cust. c/s to 00CR2503-GT, 1 yr. S/R. 08/20/03: Released and deported. 08/19/04: S/R expired.   4A1.1(a)   **3**

28. Court documents indicate that CANIZALES was found and arrested near the San Ysidro Port of Entry, after he illegally entered the United States.

29. <u>Adjustment to Supervision</u>: The defendant's term of supervised release expired on August 19, 2004, without incident.

30. 09/06/09 (Age 35)   8 U.S.C. § 1326(a) and (b), Deported Alien Found in the United States. U.S. Border Patrol (San Diego)   U.S. Dist. Crt., SD/CA, Dkt. No. 09CR03663-001-JAH. 10/30/09: P/G (fel.). 11/06/09: 10 mos. cust., 2 yrs. S/R. 07/06/10: Released. 07/09/10: Deported. 07/05/12: S/R expired.   4A1.1(b)   **2**

31. Court documents indicate that CANIZALES was found and arrested near the San Ysidro Port of Entry, after he illegally entered the United States.

32. <u>Adjustment to Supervision</u>: The defendant's term of supervised release expired on July 5, 2012, without incident.

**Criminal History Computation**

33. The criminal convictions listed above result in eight criminal history points.   **8**

34. According to the Sentencing Table (USSG Ch.5, Pt.A), a criminal history score of eight establishes a Criminal History Category IV.   **IV**

**PART C. OFFENDER CHARACTERISTICS**

    **Immigration Information**

35.   Discovery material notes that CANIZALES is a Mexican citizen who was previously deported to Mexico on July 9, 2010. ICE records also reveal that the defendant has been apprehended on 60 prior occasions, and formally ordered removed/deported on the following dates: March 5, 2000; May 17, 2000; June 7, 2001; June 15, 2001; August 20, 2003; May 22, 2009; and July 9, 2010.

    **Personal and Family Data**

36.   The defendant provided the following information during the presentence interview.

37.   CANIZALES stated he was born on January 22, 1974, in San Quintin, Baja California, Mexico, to the marital union of Ignacio Canizales-Bernal (age 80) of Tijuana, B.C., Mexico, and Heriberta Araujo-Arenibas (age 67) of Tecate, B.C., Mexico. CANIZALES advised that his parents subsequently divorced in 1993, and he was raised primarily by his father. The defendant added that his father suffers with osteoporosis, and he helped take care of him daily. He had very little contact with his mother.

38.   The defendant generally stated that he has four siblings, all surnamed "Canizales-Araujo," and living in Mexico. CANIZALES said his sister is a homemaker and his three brothers are all employed at the family's automotive body shop in Mexico. None of his siblings have any entitlements allowing them to enter the United States.

39.   CANIZALES identified his wife as Maria Magdelena Espero-Cazares (age 35) of Mexico. He stated that they have been together "for a long time." This union has produced four children, one of whom is deceased. His surviving children (each surnamed Canizales-Espero) are Sonia Isabell (age 18), Emilia Abigail (age 15) and Francisco Javier (age 8). Their youngest child, Carlito passed at an early age due to "a brain illness."

40.   As previously indicated, CANIZALES informed he would like to return to San Quintin, B.C., Mexico, to reside with his wife and children.

    **Physical Condition**

41.   The defendant reported that he underwent "stomach surgery" in Mexico, and he was involved in an accident that left him with three fractures in his left thigh. Although CANIZALES said he can walk, he expressed that physically he does not feel well.

42.   CANIZALES mentioned that he has been given medication for diabetes and high blood pressure while incarcerated and awaiting sentencing.

43.   Following the advice of defense counsel, CANIZALES declined to discuss the topic of scars and tattoos. FBI records note that the defendant has scars on his left thigh, hip, near his left and right eyes, on his back, head, and left leg.

### Mental and Emotional Health

44.  CANIZALES advised that he does not have a history of mental or emotional health problems.

### Substance Abuse

45.  Following the advice of defense counsel, CANIZALES declined to discuss the topic of substance abuse.

### Educational, Vocational and Special Skills

46.  The defendant informed that he completed nine years of schooling in Mexico. He stopped his educational pursuits due to poverty and his parents' separation, which posed a lot of personal difficulties for him.

47.  CANIZALES said he has specialized training and skill as an automotive body worker. He learned this skill at a young age when he worked with his father at the family's automotive body shop.

### Employment Record

48.  CANIZALES indicated that he has worked at his father's automotive body shop in Tijuana since he was eight years old. He and his brothers have taken over the business due to their father's poor health. The defendant related that business has been "very slow," and he last earned $100 each week.

### Financial Condition: Ability to Pay

49.  The defendant stated that he does not have any assets or liabilities. He indicated that the automotive body shop in Tijuana belongs to his father, and he and his brothers are only employees. He reiterated that he makes the equivalent of $100 per month at his employment.

50.  A financial affidavit was not available for review.

51.  Ability to Pay: Based on the defendant's limited financial resources and the likelihood that he will be deported following his release from custody, a fine is not recommend since CANIZALES does not appear to have the wherewithal to pay a fine in this matter.

**PART D. SENTENCING OPTIONS**

**The guideline options are advisory pursuant to United States v. Booker.**

### Custody

52.  Statutory Provisions: The maximum term of imprisonment is 10 years. 8 U.S.C. § 1326(b).

53. Guideline Provisions: Based on a total offense level of 10 and a Criminal History Category IV, **the guideline range for imprisonment is 15 to 21 months.**

   **Supervised Release**

54. Statutory Provisions: If a sentence of imprisonment is imposed, a term of not more than three years supervised release is authorized.  8 U.S.C. § 1326(b).

55. Guideline Provisions: If a sentence of imprisonment of one year or less is imposed, a term of supervised release of at least one year but not more than three years is optional.  Supervised release is required if the sentence exceeds one year.  USSG §§ 5D1.1(a) and(b), and 5D1.2(a)(2). The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment. USSG § 5D1.1(c).

   **Probation**

56. Statutory Provisions: The defendant is eligible for not less than one nor more than five years' probation by statute. 18 U.S.C. § 3561(c)(1).  Because the offense is a felony, the statute requires that one of the following be imposed as a condition of probation: make restitution, give notice to victims of the offense pursuant to 18 U.S.C.  § 3555, or reside, or refrain from residing, in a specific place or area, unless extraordinary circumstances exist that would make such a condition plainly unreasonable, in which event the court shall impose one or more of the other conditions set forth under subsection (b).  18 U.S.C. § 3563(a)(2).

57. Guideline Provisions: Because the minimum of the guideline range is ten months or more, the defendant is not eligible for probation.  USSG § 5B1.1, comment. (n.2).

   **Fine**

58. Statutory Provisions: The maximum fine is $250,000.  18 U.S.C. § 3571(b)(3).

59. Guideline Provisions: Based on a total offense level of 10, the guideline range for the fine is $2,000 to $20,000

   **Impact of Plea Agreement**

60. Based on the written plea agreement, the parties have agreed to the following advisory guideline calculations:

    1. Base Offense Level, USSG § 2L1.2(a)                                    8
    2. Prior Conviction, USSG § 2L1.2(b)(1)(A)(B)(C)(D)(E)                   --
       [Specific Offense Characteristic to be determined by the
       Court at the time of sentencing following preparation of a
       PSR or Criminal History Letter]
    3. Acceptance of Responsibility, USSG § 3E1.1(a)                         -2
    4. Departure for Fast Track, USSG § 5K3.1                                -4

61.   There is no agreement as to the defendant's criminal history category.

62.   The government agrees that it will recommend that defendant be sentenced to the high end of the advisory guideline range as calculated by the government pursuant to this agreement.  The defendant agrees to recommend a sentence within the advisory guideline range as calculated by the defendant at the time of sentencing.

63.   The defendant may request additional adjustments or departures under the sentencing guidelines; the government may oppose any such requests.  The defendant agrees not to seek any variances or sentence reductions under 18 U.S.C. § 3553.

**PART E. FACTORS THAT MAY WARRANT DEPARTURE**

64.   The parties have agreed to a four-level fast track departure pursuant to USSG § 5K3.1.

**PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM**

65.   None.

**PROBATION OFFICER'S ANALYSIS/JUSTIFICATION**

66.   **In analyzing this case and formulating a recommendation, the probation officer has considered the advisory sentencing guidelines and pertinent policy statement(s) issued by the Sentencing Commission in effect on the date of sentencing, along with the factors listed at 18 U.S.C. § 3553(a).**

67.   Santiago CANIZALES-Araujo (age 39) appears before the court for sentencing after pleading guilty to removed alien found in the United States.  The defendant declined to discuss his motivation for returning illegally; however, it is noted that he does not have any familial, residential, or known employment ties to the United States.  CANIZALES stated that he is embarrassed by his arrest and conviction herein, and he is "tired" of doing more prison time.  Therefore, he vowed never to reenter the United States illegally in the future.

68.   This conviction marks the defendant's fifth immigration conviction.  He has been deported or ordered removed by an immigration judge on at least seven occasions, and even more staggering are his in excess of 60 border apprehensions dating back to 2000.  CANIZALES' constant recidivism is only made more troubling by his admission during a prior immigration encounter that he was also employed as an alien smuggling foot-guide.  The defendant has served a variety of sentences for his immigration convictions, and it is logical that CANIZALES face a graduated sentence as he continues to ignore the immigration laws of the United States.

69.   CANIZALES' advisory guideline range of imprisonment, after a four-level departure for fast track, is 6 to 12 months.  In this instance, after considering the information presented above and sentencing factors contemplated under 18 U.S.C. § 3553(a), this officer

recommends 12 months' custody to hold the defendant accountable for his conduct. This sentence is sufficient, but not greater than necessary to achieve the sentencing objectives.

70. Pursuant to USSG § 5D1.1(c), a term of supervised release is not recommended, as further violations of law by CANIZALES while within the United States should be addressed through new prosecution and exposure to further imprisonment.

**SENTENCING RECOMMENDATION**

### Custody

71. Statutory Maximum:    10 years

72. Guideline Range:      6 to 12 months [USSG § 5K3.1]

73. Recommendation:       12 months

### Supervised Release

74. Statutory Maximum:    3 years

75. Guideline Range:      1 to 3 years

76. Recommendation:       None [USSG § 5D1.1(c)]

### Fine

77. Statutory Maximum:    $250,000

78. Guideline Range:      $500 to $5,000 [USSG § 5K3.1]

79. Recommendation:       0

Case 3:12-cr-05280-AJB   Document 20   Filed 03/12/13   Page 12 of 13

CANIZALES-Araujo, Santiago                                                                                          12
---

      **Special Assessment**        $100

                                      Respectfully Submitted,

                                       DAVID J. SULTZBAUGH
                                       CHIEF PROBATION OFFICER

                                       By:

                                       Kevin F. Pagay
                                       U.S. Probation Officer


Reviewed and Approved:

David E. Dilbeck
Supervising U.S. Probation Officer
March 12, 2013

PROB 2A SD

# SENTENCING SUMMARY CHART

USPO  x
AUSA ___
DEF  ___

Defendant's Name: CANIZALES-Araujo, Santiago       Docket no. 0974 3:12CR05280-001-AJB

Guideline Manual Used:   November 1, 2012       Agree with USPO Calculations:

Base Offense Level:  (Drug Quantity, if Applicable:  USSG § 2L1.2(a), removed alien found in the U.S. )       8

Specific Offense Characteristics:   USSG § 2L1.2(b)(1)(D), prior felony conv.       +4

Victim Related Adjustment:

Adjustment for Role in the Offense:

Adjustment for Obstruction of Justice:

Adjustment for Reckless Endangerment During Flight:

Adjusted Offense Level:       12

☐ Combined (Multiple Counts)   ☐ Career Offender   ☐ Armed Career Criminal

Adjustment for Acceptance of Responsibility:       -2

Total Offense Level:       10

Criminal History Score:       8

Criminal History Category:       IV

☐ Career Offender       ☐ Armed Career Criminal

Guideline Range:       from  15

(Range limited by:   ☐ minimum mandatory       ☐ stat maximum)       to   21   mths

Departures:

USSG § 5K3.1, fast track       -4

Resulting Guideline Range:       from   6

to   12   mths